# UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **KAREN CATHERINE JONES,** | Chapter 7 proceedings |
| Debtor. | Case No. 2-04-bk-19457-CGC |
| | |
| **S. WILLIAM MANERA, in his capacity as Chapter 7 Trustee,** | Adversary 2-06-ap-487-CGC |
| Plaintiff, | |
| **KNOTKNOWN RECORDS, INC., and CHRISTOPHER RICHARDSON,** | UNDER ADVISEMENT DECISION |
| Defendants. | |

## I. Introduction

This is an action brought by the Trustee S. William Manera ("Trustee") against Knot Known Records, Inc. and Christopher Richardson alleging three causes of action: 1) breach of contract; 2) unjust enrichment and 3) constructive fraudulent conveyance. The case was tried to the Court and the parties filed post-trial briefs.

## II. Facts

Karen Jones ("Jones" or "KJ" or "Debtor") was hired by Knot Known Records, Inc. ("KKR") in June 2002 to do marketing and related tasks pursuant to an "Independent Contractor Agreement." ("Agreement"). KKR was a company owned by Christopher Richardson ("Richardson"); its business model was to sign unknown bands, publicize them, assist in the preparation of recordings and then "sign" them to larger labels. The KKR parties to the Agreement,

dueling versions of which were introduced as Plaintiff's and Defendant's Exhibits 1, are ambiguously described at best: "The [stet] Chris Richardson (KnotKnown Records & KnotKnown Radio–referred to herein as "KnotKnown Records / Knot Radio or KnotKnown.")  What is clear, however, is that the only signature on the contract is of "Chris Richardson, President, KnotRadio & KnotKnown Records."  A review of the Agreement does not reveal any evidence of the parties' intent that Richardson was to be personally liable to Jones for any of the amounts due under the contract.

The Trustee's version is amended to read as a "Partnership Agreement" with an increased salary of $90,000.  However, there were no other modifications reflecting the creation of a true partnership.  Further, to the extent that Jones was paid, such payments were consistent with a salary of $50,000, not $90,000.  The Court therefore finds that the controlling agreement between the parties is Defendants' Exhibit 1.

Matters did not go well; Jones testified that she advanced substantial sums for both business expenses of KKR and personal expenses of Richardson for which she was not reimbursed.  In addition, she claims unpaid salary from KKR.

The liability of Richardson is central to the dispute in that KKR itself is defunct and unable to respond to any judgment.  Indeed, although the Trustee seeks recovery at this point against both parties, the thrust of the trial was Richardson's personal liability.

The amounts sought break down as follows: 1) unpaid salary from KKR of $6,534 and 2) unreimbursed expenses of $42,782, divided per Jones' testimony between $16,058 for KKR business related expenses and $26,734 for personal expenses of Richardson.

Paragraph 6 of the Agreement, relating to expenses, reads as follows:

> KNOTRADIO AND KNOTKNOWN RECORDS shall pay (or reimburse KJ) for all of the expenses incurred to maintain and operate KJ's Scottsdale, Arizona office, all long distance

telephone charges, all facsimile charges, cellular/digital telephone charges and all travel and living expenses incurred in connection with the engagement of KJ and the performance of her duties for KNOTRADIO AND KNOTKNOWN RECORDS hereunder.

The contract has no specific procedure set out for submission of expense receipts and/or justification for the amounts advanced. The amounts claimed are listed and supported in a spreadsheet admitted as Exhibit 2, together with receipt and credit card statements admitted as Exhibit 3. Many of the amounts claimed do not fit neatly within any of the categories set forth in Paragraph 6. They range from bar tabs to copy charges to cash advances to plane tickets. Jones' testimony was that Richardson never had cash or, apparently, a functioning credit card and that she was often called upon to pay these amounts on the spot. In effect, to accept Jones' version of the business relationship is to accept that she voluntarily acted as an informal bank for KKR, not merely advancing funds to pay her expenses, as provided under Paragraph 6, but also advancing substantial sums directly or for the benefit of KKR and/or Richardson in a manner well outside the terms of the Agreement. For his part, Richardson testified that all amounts advanced were for the benefit of the corporation and not for his personal benefit.

The Trustee's case for Richardson's personal liability rests on two major premises: 1) Richardson orally agreed with Jones that he owed the amounts personally and 2) the non-business expenses advanced by Jones were for Richardson's personal benefit. While another basis for liability could be "alter ego" or "piercing the corporate veil", the Trustee put on no evidence to support such a theory and does not argue it in his trial brief.[1] On the first point, the Trustee introduced an audio portion of a video tape in which Jones and Richardson met at Jones' home office and during which the Trustee asserts Richardson repeatedly promised to pay Jones for the

---

[1] Richardson did introduce evidence that KKR was duly incorporated under Arizona law and that the corporate formalities were observed by the entity.

amounts advanced. Although Richardson did state that Jones would be paid, the tape is not clear that the commitment came from Richardson personally, as opposed to the corporation. Indeed, Jones' primary purpose for the meeting was to induce Richardson to sign a personal promissory note for the alleged advances. Richardson demurred, stating that he wanted the note and the underlying receipts (the same as in Exhibit 3) to be reviewed by his lawyers before he would sign. The note was never signed.

The second premise is that many of the expenses were advanced for Richardson's personal benefit. The record on this point is murky. To the extent the advances were clearly for the benefit of KKR, the record does not support a finding that Richardson should be personally liable. With regard to the others, there is no substantial evidence of an explicit agreement between Richardson and Jones that Richardson would repay amounts advanced for purely personal reasons. Jones testified that Richardson repeatedly said that he had a trust fund and that she would be taken care of; she further testified that Richardson's mother assured her that she would be repaid. This testimony begs the question, however, of why Jones was willing to advance these substantial funds in the absence of any firm basis for repayment. Was it, as she suggested, to help out a friend? Was it in an effort to further her own career? Were the advances in reality gifts? Were they made with any realistic expectation of being repaid? The record does not provide answers to these questions.

### III. Legal Analysis

#### A. Breach of Contract

##### 1. The Contract with KKR

An Agreement did exist between Jones and KKR. As noted above, there is no basis to hold Richardson personally liable for a breach of that contract. Therefore, any claim for unpaid wages is limited to KKR. However, the evidence shows that, even as to KKR, there is no salary unpaid.

The only amount in dispute between the two parties on salary is $5,000 represented by check number 1424. That check cleared but credit was not provided in Exhibit 2. Although Jones refused to concede the point, the record supports a finding that no wages are due from KKR.

On the issue of expenses, the record is again murky. As noted above, there is no evidence of expenses being routinely submitted on a voucher or any other form of summary to KKR. The only listing is Exhibit 2 that was the basis for a demand upon Richardson, not upon KKR. Nevertheless, it does appear that there were unreimbursed expenses due to Jones from KKR in the amount of at least $16,058. Defendants do not seriously take issue with this point. Therefore, judgment will be given to the Trustee against KKR only in that amount.

### 2. The alleged oral contract with Richardson

The heart of the Trustee's contract case is that Richardson orally agreed with Jones to be personally liable for all of the expenses, including those that were "strictly business" and those that were personal. As noted above, the record does not support this conclusion. As noted in the Trustee's brief, "[t]he determination of the parties' intent must be based on objective evidence, not the hidden intent of the parties." Unfortunately for the Trustee, Jones' hidden intent is the bulk of the evidence that exists. The evidence on the oral contract is ambiguous and insufficient. There never was a meeting of the minds that a written contract would be signed as is evidenced best by the fact that one was not signed. In short, the evidence is simply insufficient to support a finding that Richardson orally bound himself personally to pay the expenses of KKR or even to pay back amounts that may have been advanced solely for his benefit. Therefore, judgment will be given for Richardson on the oral contract claims.

### B. Unjust enrichment

### 1. The basis for the claim

Recognizing the difficulty with his contract claims, the Trustee amended the complaint to assert an unjust enrichment claim against Richardson. It is to that claim that the Court now turns.

Unjust enrichment is an equitable remedy that may support a recovery in the total absence of a contract between the parties or any basis in tort for one party to be liable to the other. It is not to be rigidly or formulaically applied but rather is a "flexible, equitable remedy available whenever the court finds that 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity' to make compensation for benefits received." *Murdock-Bryant Construction, Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985). *Murdock* is the definitive Arizona law on the issue and provides the basis for analysis here.

Under *Murdock*, the basic test is that a plaintiff must demonstrate that the defendant received a benefit, that by receipt of that benefit the defendant was unjustly enriched at plaintiff's expense, and that the circumstances were such that in good conscience defendant should make compensation. 703 P.2d at 1202. In that case, a contractor misled a subcontractor into excavating a site at an insufficient price; the issue for the Supreme Court was whether the owner of the site, with whom the subcontractor had no contractual or other connection, was unjustly enriched and should compensate the subcontractor. The Court analyzed each factor in order, finding that the excavation did in fact benefit the owner (since the site would have had to be cleared by someone in order to be developed) and that the benefit was at the expense of the subcontractor. The latter point is important because a party who is enriched without the party suffering a detriment is not entitled to recovery against the undamaged party.

However, establishing these two points is not enough; the court must further decide whether it would be "inequitable or unjust" for the defendant to retain the benefit without compensating the plaintiff. To answer this question, the plaintiff must show that "it was not intended or expected that

the services be rendered or the benefit conferred gratuitously, and the benefit was not 'conferred officiously.'" 703 P.2d 1203. In *Murdock*, the court was persuaded that *Murdock* "did not render services gratuitously or officiously, but **pursuant to a contract and with the expectation of compensation for its work**." *Id*. (Emphasis supplied). Thus, a key point for the court was whether there was an objective basis for determining that Murdock expected to be paid even if the agreed upon source of payment was not from the owners.

Unjust enrichment is a theory of recovery for a party that does not otherwise have an adequate remedy at law. *See, e.g., City of Sierra Vista v Cochise Enter., Inc*, 144 Ariz. 375, 697 P.2d 1125 (App. 1984). In this case, its potential applicability is therefore limited to Richardson and not KKR in that the Agreement proscribed the contours of its obligations to Jones.

**2. Was a benefit conferred on Richardson by Jones?**

Jones testified that she paid for personal expenses of Richardson; Richardson denied this, saying that all of Jones' expenditures were business related. Trustee's Ex. 2 is a list of the expenses Jones says that she incurred; she identified those expenses that she contends are business related and testified that the remainder were personal expenses of Richardson. Ex. 3 consists of the detailed back-up, including receipts and credit card statements. With very few exceptions, these involve charges for purchase of goods or services from third parties. The charges begin June 12, 2002, and end January 28, 2003, and some bear the identification "KKR" and some "Chris." The vendors include airlines, hotels, bars, restaurants, cell phone service, and gasoline, among others.

Undoubtedly, Jones incurred debt in accumulating these charges. The question is whether this action incurred a benefit on Richardson? As noted above, the evidence is ambiguous and insufficient. Certainly, it appears that some of the charges may have been for Richardson personally–for example, the gas charges or the "Chris Rx". But, at bottom, the court is left guessing

as to what was going on, why these charges were made, what exactly they were for and whether they were ultimately for the benefit of KKR. In short, the Trustee has not proven that the transfers were made for the personal benefit of Richardson.

**3.      If there was enrichment, is it unjust?**

Even assuming that the court could find that some portion of the disputed charges were for the benefit of Richardson, the ultimate question still remains: would it be unjust or inequitable for Richardson to retain those benefits without compensating Jones–or, at present–the estate? The answer is no.

Unlike *Murdock*, where there was a contractual basis with others to justify the expenditures to clear the site, there is no objective basis here to find and conclude that any benefits to Richardson were not conferred gratuitously. The amounts sought are well beyond the scope of **Jones'** expenses that were addressed in the Agreement. Indeed, Jones testified that she was paying these expenses and incurring these liabilities to "help a friend." Further, the time element does not support the Trustee's case. In *Murdock*, immediately upon learning that the contractor would not pay for additional work beyond the agreed upon contract amount, *Murdock* ceased work, walked off the job and sued for payment. Here, assuming Jones was advancing funds or incurring debt for Richardson, she did so without formalizing a repayment scheme (her attempt to do so was unsuccessful) or without "pulling the plug." If there truly was an expectation of repayment, some course of action other than continuing to advance on this haphazard and undocumented basis should have occurred. In short, when she made the advances, she did so without an objective basis upon which to believe that she would be repaid. The lack of such a basis undermines the Trustee's argument that any enrichment was unjust.

For the foregoing reasons, judgment will be given to Richardson on the unjust enrichment

claim.

### C. Fraudulent conveyance

This case was filed on November 5, 2004. The last transfer listed in Exhibit 1 was in January 2003. Section 548 has a statute of limitations of one year; therefore, no claim lies under that section.

Section 544(b) allows the trustee to step into the shoes of an actual creditor to pursue claims under applicable state law, here A.R.S. § 44-1001 to -1010. This claim is not time-barred as the Arizona statute has a reach-back period of four years. However, the Trustee must prove either that the Debtor was engaged in a business with unreasonably small capital or intended to incur debts beyond her ability to pay (A.R.S. § 44-1004) or was insolvent at the time of the obligation or became insolvent as a result of incurring the obligation (A.R.S. § 44-1005). The Trustee did not introduce evidence on any of these points; lacking this essential evidence, the fraudulent conveyance count must fail.

More fundamentally, what the Trustee seeks to do here is avoid the incurrence of the obligations Jones undertook to third parties and then seek to recover that not from the third parties but from Richardson. Section 550 allows recovery from a party who is not a transferee only if such party is "the entity for whose benefit such transfer was made." The Court has already found, as detailed above, that the evidence is insufficient to establish that these transfers were made for Richardson's personal benefit. For this additional reason, the fraudulent conveyance count must fail.

## IV. Conclusion

For the foregoing reasons, judgment will given to Richardson on all counts and against KKR to the extent enumerated above.

Counsel for Defendant is to prepare and lodge a form of judgment.

**Dated: February 28, 2008**

Charles G. Case II
United States Bankruptcy Judge

**COPY** of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

**MARGARET A. GILLESPIE**
COLLINS, MAY, POTENZA, BARAN & GILLESPIE
2210 BANK ONE CENTER
201 NORTH CENTRAL AVENUE
PHOENIX, AZ 85073-0022

**CARLOS M. ARBOLEDA**
ARBOLEDA BRECHNER
4545 E. SHEA BLVD., #120
PHOENIX, AZ 85028